# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | Case No. 15-00091-TLM |
| CESAR ALCARAZ, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

On January 30, 2015, Cesar Alcaraz ("Debtor") commenced this chapter 13 case[1] by filing a voluntary petition.[2] Debtor is an above median income debtor with a 60 month applicable commitment period. *See* Doc. No. 6 (Debtor's Form 22C). The chapter 13 trustee, Kathleen McCallister ("Trustee"), objected to Debtor's amended chapter 13 plan because Debtor did not propose to contribute all his projected, monthly disposable income. Doc. No. 37. However, at a June 16, 2015 hearing, Trustee recommended confirmation of Debtor's amended chapter 13 plan, and an order of confirmation, endorsed by Debtor and Trustee, was entered on September 24, 2015. Doc. No. 46 ("Confirmation Order"). The Confirmation Order provided, *inter alia*, that "Due to the fact that the Debtor is not using all of

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and all rule citations are to the Federal Rules of Bankruptcy Procedure.

[2] Though Debtor is married, his spouse did not join in the petition.

MEMORANDUM OF DECISION - 1

his disposable income to fund the plan and is not meeting the disposable income requirement of his 22c, the Debtor agrees that all general unsecured creditors will be paid 100% of their allowed claims plus 3% interest per annum." *Id.* at 2. It was upon this agreement and understanding that the plan was confirmed.[3]

On October 31, 2016, Debtor filed a motion under § 1329 to modify the confirmed plan. Doc. No. 58. That motion contended that Debtor and his spouse experienced negative changes in income and that other circumstances warranted modification including falling behind on a mortgage obligation. Debtor proposed to reduce his monthly plan payments. He also proposed to turnover all net tax refunds from tax year 2016 forward to Trustee for distribution.[4] He also proposed eliminating interest payments on unsecured claims from and after modification. Trustee objected.

Debtor then filed an amended modification motion. Doc. No. 67 ("Motion"). It again noted the decreased income and defaulted mortgage obligation as in the preceding motion. It also explained that Debtor's spouse had acquired different employment post confirmation, which required additional travel and triggered a need to replace an older vehicle with extensive mileage. Debtor

---

[3] Other than one secured creditor who filed an objection as to a different issue and then withdrew it, no creditors appeared or objected to the plan.

[4] The confirmed plan provided for Debtor's turnover of annual net tax refunds only to the extent they exceeded $3,600, Doc. No. 26 at 2, and the proposed modification eliminates Debtor's retention of the initial $3,600.

MEMORANDUM OF DECISION - 2

proposed to reduce his monthly plan payments from $750.00 to $159 for his 21st (November 2016) through 26th monthly payment, and then increase the payment to $365.00 per month for the remainder of the plan. He still proposed turnover of all net tax refunds from 2016 through the end of the plan. And Debtor removed the prior request to eliminate the 3% interest on unsecured claims. Debtor asserted his modification was proposed in good faith and he was still paying all allowed unsecured claims in full with interest. Debtor explained that while his revised budget reflected some funds available monthly, these were necessary for the replacement vehicle for Debtor's spouse so she could meet the requirements of her employment and generate the income contributed to the plan.[5]

Trustee objected to the Motion. Doc. No. 69 ("Objection"). Trustee argued that the modification was not proposed in good faith. Additionally, though conceding that the requirements of § 1325(b) are not applicable to modifications under § 1329, Trustee argued that IRS allowances used for disposable income analysis are nonetheless "guidelines" relevant in determining whether budget expenses are reasonable. Trustee further argued Debtor did not propose adequate plan payments, and stated, "Creditors should not have to bear the risk that Debtor will maintain employment and his health for the duration of 60 months when

---

[5] This amended motion was served on Trustee and parties having appeared in the case, but was not served on creditors shown on the master mailing list. However, the prior motion, Doc. No. 58, was so served, and the amended motion proposed only enhanced treatment (a slightly higher monthly payment from the 26th month on, and reinsertion of the 3% interest on unsecured claims) from the prior modification motion.

MEMORANDUM OF DECISION - 3

debtor has sufficient funds to pay them off sooner." *Id.* at 2.

Following Debtor's reply to the Objection, the matter was set for an evidentiary hearing on February 13, 2017, and the Motion and Objection were taken under advisement.[6]

**ADDITIONAL FACTS**

In addition to the matters noted above, the evidence at hearing also established the following.

Debtor is 31 years old and works as a mechanic. His spouse recently obtained a job as an account representative. Toward the end of 2016, Debtor experienced medical problems, and he has since received advice and follow up care. He will at some point need surgery.[7] These medical issues, and the break-down of his spouse's vehicle coupled with the travel demands of her new job, create the problems leading to Debtor's financial stress and the suggested modifications of the confirmed plan.

Though amended schedules I and J filed in mid-December 2016 suggested monthly net income of $506.15, an amended schedule J filed shortly before hearing reduced that projected monthly net income to $186.15. Exs. 100, 101. The amended amount reflects a $320.00 monthly payment on a used vehicle

---

[6]  This Decision constitutes the Court's findings and conclusions per Rule.

[7]  Debtor created and is funding a Health Savings Account, and his amended budget also includes a monthly $100.00 payment for AFLAC insurance coverage to assist in the event of prolonged absence from work following medical treatment.

MEMORANDUM OF DECISION - 4

acquired by Debtor and his spouse.  Ex. 102.

In addition to cross-examining Debtor, Trustee introduced exhibits reflecting IRS transportation and living expense allowances for bankruptcy cases filed after November 2016.  Exs. 210, 211.[8]  Trustee's staff attorney testified that by her analysis, Debtor's expenses exceed the IRS allowances for his family size. However, under cross examination, she admitted that those expenses had not changed dramatically from those in Debtor's original schedules.

**DISCUSSION AND DISPOSITION**

A modification to a confirmed chapter 13 plan must comply with § 1329 and with Fed. R. Bankr. P. 3015(g).  *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir. 1994); *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 542–44 (9th Cir. BAP 2007).  An objection to a proposed modification creates, pursuant to Rule 3015's language, a contested matter governed by Rule 9014. Thus, Court ruling—and approval—of a modification is required.  Unless and until a § 1329 modification is granted, the plan as confirmed is binding on all parties.  *See* § 1327(a).

Despite dispute over (and less than crystalline record regarding) certain factual matters, the fundamental propositions that control the outcome of this matter are clear.

---

[8]  Debtor's case was filed in January 2015, but Trustee argues that the current allowances are relevant to the pending modification.  Given the outcome of this matter, the Court need not address any issues with this approach.

MEMORANDUM OF DECISION - 5

• Debtor is an above-median income debtor and subject to a 60 month applicable commitment period. The plan, even as modified, is for 60 months.

• Though Debtor's amended plan did not propose to contribute all projected disposable income on a monthly basis, his alternative of committing to 100% payment of all allowed unsecured claims, plus 3% interest on such claims, was expressly agreed to and accepted by Trustee. The plan providing for that treatment and approach was confirmed without objection.[9]

• Debtor's Motion proposes precisely the same approach as Trustee accepted at the time of confirmation, to wit: a plan that pays allowed unsecured claims 100% plus 3% interest. Debtor also now proposes to provide, in addition to monthly payments, all net tax refunds received during the plan's term (and not just amounts exceeding $3,600/year as in the confirmed plan), starting with the refund for the 2016 tax year.

Trustee's singular Objection is that the modification is not proposed "in good faith" and thus fails to meet the requirements of § 1329(a) and (b).[10] Trustee emphasizes that Debtor's post-confirmation budget does not meet the IRS guidelines in certain categories. Trustee also argues that Debtor has not proposed

---

[9] This treatment of allowed unsecured claims is not changed by the Motion's proposed modification. While there was a post-confirmation default to a secured creditor, the same is to be cured over a period of a few months by virtue of an agreement between Debtor and that creditor.

[10] Trustee has not argued that other provisions of § 1325(a), made applicable by § 1329(b), are unmet.

MEMORANDUM OF DECISION - 6

to increase his monthly payments at certain future points when obligations now budgeted for are paid off. Finally, Trustee argues that creditors should not bear the risk of Debtor defaulting in his performance of the plan due to a loss of employment or medical issues when he has, in her view, "sufficient funds to pay them off sooner." Objection at 2.

### A.    Modification and good faith

To obtain a modification under § 1329(a), a debtor must show that the proposed modification meets the requirements of § 1325(a). *See* § 1329(b)(1) ("the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."). Thus, the good faith requirement of § 1325(a)(3) applies. Good faith is determined on a case-by-case basis after reviewing the totality of the circumstances. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224–25 (9th Cir. 1999).[11]

However, while § 1325(a)(3) is applicable to modifications under § 1329, the projected disposable income requirements of § 1325(b) are not similarly incorporated. *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 775–82 (9th Cir. BAP 2005). The Panel there stated that § 1329(b) "expressly applies certain

---

[11]  *Leavitt* notes that factors applicable to the good faith determination include (1) whether the debtors misrepresented facts, unfairly manipulated the Bankruptcy Code or otherwise proposed the plan in an inequitable manner; (2) the history of debtor's filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether the debtor's behavior was "egregious." *Id.* at 1224. *See also Meyer v. Lepe (In re Lepe)*, 470 B.R. 851, 857–58 (9th Cir. BAP 2012) (considering *Leavitt* factors in a § 1325(a)(3) analysis).

MEMORANDUM OF DECISION - 7

specific Code sections to plan modifications but does *not* apply § 1325(b).

Period." *Id.* at 781.

*Sunahara* recognizes, however, that a determination of a debtor's good

faith in proposing a modification:

> necessarily requires an assessment of a debtor's overall financial
> condition including, without limitation, the debtor's current disposable
> income, the likelihood that the debtor's disposable income will
> significantly increase due to increased income or decreased expenses
> over the remaining term of the original plan, the proximity of time
> between confirmation of the original plan and the filing of the
> modification motion, and the risk of default over the remaining term of
> the plan versus the certainty of immediate payment to creditors.

*Id.* at 781–82.[12]

Thus Trustee is entitled to note and call attention to any and all features of

Debtor's post-confirmation budget, even if those observations otherwise relate to

projected disposable income requirements.  But a failure to meet § 1325(b)

guidelines does not establish *ipso facto* an inability to modify nor establish a lack

of good faith.  Whether a plan modification has been proposed in good faith is a

question of fact.  *Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 367 (9th Cir.

BAP 2012) (citing *Downey Sav. & Loan Ass'n v. Metz (In re Metz)*, 820 F.2d

---

[12]   The Panel also noted that "important components of the disposable income test are
employed as part of a more general analysis of the total circumstances militating in favor of or
against the approval of modification, without requiring tortured and illogical statutory
interpretations[.]" *Id.* at 781.

MEMORANDUM OF DECISION - 8

1495, 1497 (9th Cir. 1987)).[13]  The Court is charged with determining, from the

entirety of the evidence and record, whether that fact is established.  The Panel in

*Mattson* stated:

> Contrary to the bankruptcy court's belief that the good faith test
> lacks predictability, we continue to accept that a good faith analysis
> under § 1325(a)(3), although not an exact science, adequately guides
> the exercise of the court's discretion for deciding plan modification
> issues.
>
> > [O]ur reliance in *Sunahara* on the § 1325(a)(3) good
> > faith standard is vulnerable to criticism that it introduces
> > a level of subjectivity that could yield disparate results.
> > That subjectivity, however, is constrained by settled law
> > of the circuit that good faith is to be assessed through the
> > matrix of whether the plan proponent 'acted equitably'
> > taking into account 'all militating factors' in a manner
> > that equates with the 'totality' of circumstances.
>
> *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 543 (9th Cir. BAP
> 2007) (citation omitted).  Thus, the *Fridley* Panel dismissed the
> argument that adopting the reasoning in *In re Sunahara* would license
> "circumvention of § 1325(b) by the ploy of confirming a plan that
> complies with § 1325(b) and then promptly modifying the plan in a
> manner that does not comply with § 1325(b).  Such a stratagem plainly
> would be an unfair manipulation of the Bankruptcy Code, which is a
> factor named in *Goeb*[14] as indicative of a plan proponent not acting
> equitably and, hence, not in good faith."

*Mattson*, 468 B.R. at 371.

In considering the *Leavitt* factors, the Court finds two (the history of filings

and dismissals, and filing solely to defeat state court litigation) to be totally

---

[13]  The burden of establishing that fact is on Debtor as the proponent of the modification.
*Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 436 n.11 (9th Cir. BAP 1997).

[14]  *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386 (9th Cir. 1982).

MEMORANDUM OF DECISION - 9

irrelevant.  Nor was there any evidence or credible argument to establish Debtor's
conduct was "egregious."  Similarly, there was no evidence of any
misrepresentation of fact or unfair manipulation of the Code.  At best, Trustee's
Objection suggests her view that the proposed modified plan is "inequitable."

The good faith test "should examine the intentions of the debtor and the
legal effect of the confirmation of a Chapter 13 plan in light of the spirit and
purposes of Chapter 13."  *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d
1440, 1444 (9th Cir. 1986).  The spirit and purposes of chapter 13 allow for shared
success.  Debtors can deal with the challenges they face and restructure their
financial affairs.  Creditors can receive more than they would in chapter 7 and, in
certain circumstances, full payment of their claims.  Such is the situation here
under both the confirmed and the proposed modified plan.

In light of employment changes, unanticipated medical issues, and other
challenges, Debtor has adjusted his budget, but he has not reduced the proposed
distributions to unsecured creditors.  If successful, he and his spouse win, and so
do his creditors.  If he fails, he will be faced with the need for additional
modification, or potential dismissal—a result which would reflect that he, as well
as his creditors, will lose the benefit of chapter 13.  The evidence, including
Debtor's testimony, reflects Debtor's sincerity in proposing an approach that
meets his and his spouse's needs as well as pays all his creditors.  And, to counter
Trustee's criticism, Debtor made clear that the changes in his budget were

MEMORANDUM OF DECISION - 10

designed to ensure that he and his spouse could continue to make ends meet and successfully complete performance of their proposed modified plan.

Trustee argues that creditors should not bear the risk that Debtor will fail. No creditor has appeared or raised such concerns. Perhaps the promise of full payment plus interest, and the consequence of dismissal and lack of discharge if Debtor cannot meet that promise, is enough for the creditors.

As noted, Trustee also points to the fact that Debtor's budget, in certain areas, exceeds IRS guidelines applicable under § 1325(b).[15] Of course, under the case law, that is not a directly relevant issue. Even if it were, the Court has considered carefully Trustee's critique of the budget, and finds it wanting. To successfully perform, Debtor must plan against the known, and likely, disruptions that might occur, as well as accommodate the expenses incurred in light of his spouse's new employment. The evidence suggests that he has. While Trustee has pointed out specific expense issues that concern her, which is certainly appropriate, the Court finds that Debtor has met his burden and that the Objection, which is here based solely upon an alleged absence of good faith, is not well taken.

**CONCLUSION**

The Court finds and concludes that the Objection will be overruled and the

---

[15] However, certain of the margins by which Debtor's expense categories exceed IRS guidelines are *de minimis*.

MEMORANDUM OF DECISION - 11

Motion will be granted.  Debtor may prepare a form of order so providing, which

shall be submitted with Trustee's endorsement as to form.

DATED:  March 13, 2017



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12